UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CATHY CONLON,                                                              Index No.:

                              Plaintiff,

   -against-                                                                         **COMPLAINT**

RAEL FIRE PROTECTION, LLC                                       **JURY TRIAL DEMANDED**

                             Defendants.
-------------------------------------------------------------------X

Plaintiff, CATHY CONLON ("Plaintiff"), by and through her attorneys The Siegel Law Firm, P.C., and The Waxman Law Firm, as and for her Verified Complaint against Defendant, RAEL FIRE PROTECTION, LLC ("Defendant") respectfully alleges as follows:

## INTRODUCTION

This is an action for equitable relief and monetary damages on behalf of the Plaintiff deprived of her statutory and constitutional rights as an employee due to Defendants' gender discrimination.

## VENUE AND JURISDICTION

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff has causes of action pursuant to Title VII of Civil Rights Act, and 42 U.S.C. 2000e *et seq.*

2. The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

3. Venue is proper in this District under 28 U.S.C. §1391 because this is where Defendant can be found and transact their affairs and because the events or omissions giving rise to the claims occurred in this District.

1

## PROCEDURAL REQUIREMENTS

4. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 26, 2021.

5. Plaintiff received a right to sue letter on May 10, 2021.

## PARTIES

6. At all times hereinafter mentioned, Plaintiff is an individual who resides at 5384 66th Street, Maspeth, NY 11378.

7. At all times hereinafter mentioned, upon information and belief, Defendant is a domestic Limited Liability Company, with its primary place of business located at 1750 Plaza Avenue, New Hyde Park, NY 11040, which employs more than 15 employees.

## BACKGROUND

8. Plaintiff was employed by Defendant from in or about June 2020, to on or about November 10, 2020, as a Sales Associate.

9. Plaintiff was one of only two female sales associates, with the other female sales associate being a relative of the principal of Defendant

10. Plaintiff reported to her supervisor Patrick O'Neill ("O'Neill")

11. Beginning at the time of her interview with Defendant, and continuing throughout the term of her employment up to the time that she was unlawfully terminated, Plaintiff was subjected to sexist and gender-based discrimination and harassment, including but not limited to disparate treatment and hostile work environment.

12. Plaintiff was terminated from her employment with Defendant in retaliation for complaining about the discrimination and harassment that she experienced.

13. During the interview process, Plaintiff met with and was interviewed by O'Neill.

14. During her interview with O'Neill, numerous inappropriate inquiries were made into Plaintiff's personal life for approximately two hours, including questions concerning Plaintiff's ex-husband, her children, and her personal background.

15. Shortly after being hired by Defendant, O'Neill began harassing Plaintiff through bullying, intimidation, interference with her ability to work, making frequent comments concerning Plaintiff's personal and family life, and engaging in gender-based slights and remarks.

16. Examples of O'Neill's gender-based comments and remarks include comments made to Plaintiff that she is "not a waitress anymore", implying that sales is more difficult than waitressing, and repeatedly indicating that Plaintiff is not cut out for sales. Plaintiff has never been employed as a waitress and never mentioned waitressing to O'Neill.

17. O'Neill also regularly referenced that Plaintiff was shopping while she was working, and frequently commented that any success Plaintiff had with sales, leads, or clients had to do with sex.

18. O'Neill made frequent comments concerning Plaintiff's personal life, including things that Plaintiff had not mentioned to him and that he should not have known, and were inappropriate to be discussed in the workplace especially by a supervisor, such as statements related to Plaintiff's ex-husband, her ex-husband's business, Plaintiff's children, and her status as a single mother.

19. Plaintiff also caught O'Neill staring at her on several occasions, which made her feel uncomfortable and objectified.

20. O'Neill provided training, sales assistance, and instruction to the male sales associates.

21. O'Neill failed or refused to provide Plaintiff with any training, sales assistance, or instruction that he provided to male sales associates.

22. Plaintiff was treated differently and worse by O'Neill than the male sales associates because of her gender and her familial status as a divorcee and single mother.

23. Despite not being provided with the same level of training, assistance, or instruction as the male sales associates, Plaintiff still managed to perform her job in a successful manner, and made several substantial sales.

24. Although landing a number of sales and performing her job in a successful manner, despite not receiving the same training, instruction, or assistance as her male counterparts, O'Neill frequently singled out, bullied, and attempted to humiliate Plaintiff in front of co-workers, as well as in private.

25. O'Neill did not single out, bully, or attempt to humiliate the male sales associates.

26. Due to the hostile work environment and disparate treatment that Plaintiff was experiencing, she made complaints to O'Neill about such treatment.

27. In response to Plaintiff's complaints, O'Neill engaged in retaliatory conduct against Plaintiff by escalating the scale of his harassment toward plaintiff, taking away sales and sales leads, implementing an unreasonable artificial sales deadline upon Plaintiff, creating pretextual performance issues, and terminating Plaintiff's employment.

28. On or about August 16, 2020, Plaintiff began working from the storage room, which was not climate controlled, due to the hostile actions of O'Neill.

29. On or about August 17, 2020, while at a business golf outing, O'Neill stated to Plaintiff, in front of vendors, that Plaintiff should utilize her looks that day to find another job

because Plaintiff was in an area filled with men. O'Neill's comments made Plaintiff feel humiliated and objectified.

30. After making his comments about Plaintiff utilizing her looks to find other employment, O'Neill stared at Plaintiff in an unsettling manner while seated at their table, making Plaintiff feel uncomfortable, and resulting in Plaintiff removing herself from the group table.

31. O'Neill's discriminatory conduct against Plaintiff was both severe and pervasive.

32. On or about October 5, 2020, Plaintiff made complaints to CEO Steven Godfrey ("Godfrey") about O'Neill's behavior toward Plaintiff.

33. Following the complaint made to Godfrey, Neither Defendant, nor any of Defendant's agents, employees, or principals, took any measures to investigate, mitigate or address Plaintiff's complaints or O'Neill's discriminatory conduct.

34. In the weeks after Plaintiff made complaints to Godfrey, O'Neill engaged in further retaliatory actions by taking deliberate measures to undermine and interfere with Plaintiff's sales productivity and ability to close sales. Plaintiff did not engage in any similar conduct with any male sales associates. Defendant was aware of O'Neill's retaliatory conduct, and permitted and condoned such behavior.

35. Further examples of O'Neill's retaliatory behavior include taking credit for several significant sales leads that Plaintiff had procured, which O'Neill indicated were too big for Plaintiff to handle because she was female.

36. O'Neill also took away other significant leads that Plaintiff had developed and transferred them to a male sales associate who had only recently been hired. O'Neill interrogated Plaintiff on whether she somehow utilized sex to obtain the leads, and berated and

5

criticized Plaintiff for directing a sales lead to another product sold by Defendant which was not one of Plaintiff's regular sales products.

37. O'Neill did not treat male sales associates in the manner described in paragraph 34 through 36, above.

38. On or about October 15, 2020, after O'Neill had taken away sales leads and clients from Plaintiff, O'Neill provided Plaintiff with an ultimatum to make $50,000.00 worth of sales within a three-week period or she would be terminated.

39. The sales quota imposed by O'Neill was unreasonable, especially in light of the sales leads and clients that had been taken away and was a pretext for Plaintiff's unlawful termination. Male sales associates were not subject to similar actions.

40. On or about November 10, 2020, within five weeks of her complaint to Godfrey concerning O'Neill, Plaintiff's employment with Defendant was terminated.

41. On or about November 12, 2020, while smiling, O'Neill stated to Plaintiff "do you want me to get you a waitress job?", alluding that as a female, Plaintiff should be working in a less prestigious profession, such as a waitress.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964)**

42. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "41" as if fully set forth herein.

43. Plaintiff was employed by Defendant.

44. Defendant engaged in a pattern and practice of discrimination against Plaintiff with respect to the terms, conditions and privileges of employment because of her gender.

45. As part of its pattern and practice of employment discrimination, Defendant treated Plaintiff in a manner indicative of gender discrimination.

6

46. Defendant knew or should have known about gender discrimination in the workplace.

47. Defendant failed and refused to take appropriate action to end the discriminatory treatment and conditions which she was subjected to, which was clearly motivated by gender discrimination.

48. Defendant acted in an outrageous and systematic pattern of oppression and bad faith, directed at Plaintiff.

49. Because of the discriminatory acts of Defendant, Plaintiff suffered emotional distress, humiliation, and damages for front pay and back pay.

50. In the discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964)**

51. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "50" as if fully set forth herein.

52. Defendant engaged in various severe and hostile actions toward Plaintiff as a result of her opposition to gender discrimination and as a result of her making such complaints with management.

53. Due to the severe and hostile acts of Defendants, Plaintiff suffered emotional distress, anxiety, and loss of job opportunities.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Retaliation – Violation of 42 U.S.C. §12203)

54.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "53" as if fully set forth herein.

55.  Plaintiff engaged in protected activity by making complaints to O'Neill and Godfrey about the harassment she experienced by O'Neill.

56.  Defendant knew that Plaintiff had engaged in protected activity.

57.  In retaliation to Plaintiff's protected complaints, Defendants engaged in various retaliatory actions against Plaintiff, including but not limited to increasing the harassing behavior toward Plaintiff, taking away sales leads and clients, imposing an artificial and unreasonable sales quota on Plaintiff, and terminating Plaintiff's employment.

58.  Defendant's violations and retaliation caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Gender Discrimination in Violation of New York State Executive Law §296)

59.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "58" as if fully set forth herein.

60.  New York Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

61.  Defendant discriminated against Plaintiff because of her gender.

62.  As a direct and proximate result of the unlawful employment practices of Defendant, Plaintiff suffered the indignity of gender discrimination and great humiliation.

63.  Defendant's violations caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Retaliation – Violation of N.Y. Exec. Law §296(1)(e))

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "63" as if fully set forth herein.

65. Plaintiff engaged in protected activity by making complaints to O'Neill and Godfrey about the harassment she experienced by O'Neill.

66. Defendant knew that Plaintiff had engaged in protected activity.

67. In retaliation to Plaintiff's protected complaints, Defendants engaged in various retaliatory actions against Plaintiff, including but not limited to increasing the harassing behavior toward Plaintiff, taking away sales leads and clients, imposing an artificial and unreasonable sales quota on Plaintiff, and terminating Plaintiff's employment.

68. Defendant's violations and retaliation caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities

69. Under N.Y. Exec. Law §297(10), Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of N.Y. Exec. Law §296)

70. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "69" as if fully set forth herein.

71. N.Y. Exec. Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

72. The law also makes it unlawful to create an atmosphere where gender discrimination and/or retaliation are encouraged and/or tolerated.

73. Defendant engaged in various hostile actions against Plaintiff as a result of her opposition to gender discrimination and as a result of making such complaints with management.

74. As a direct and proximate result of the unlawful employment practices of Defendant, Plaintiff suffered the indignity of gender discrimination and great humiliation.

75. Defendant's violations caused Plaintiff mental anguish, emotional distress, and loss of employment opportunities.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(Counsel Fees, Expert Fees, and Costs)

76. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "75" as if fully set forth herein.

77. Pursuant to 42 U.S.C. §2000e-5(k), in any action or proceeding under 42 U.S.C. §2000e *et seq.*, the court, in its discretion, may allow the prevailing party a reasonably attorney's fee (including expert fees).

78. Pursuant to 42 U.S.C. §1988(b), in any action or proceeding to enforce a provision of 42 U.S.C. §1981, the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee.

79. Pursuant to N.Y. Exec. Law §297(10), an employer may be liable for attorneys' fees for having committed an unlawful discriminatory practice.

80. In light of the discriminatory practices committed by Defendant, Plaintiff is entitled to recover all counsel fees, expert, fees and all other costs associated with the litigation of this action.

81. Plaintiff demands all counsel fees, expert fees, and other costs associated with the litigation of this action.

## JURY TRIAL

82. Plaintiff demands a trial by jury of all issues in this action that are so triable.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a. On Plaintiff's FIRST CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $250,000.00;

b. On Plaintiff's SECOND CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $250,000.00;

c. On Plaintiff's THIRD CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $250,000.00;

d. On Plaintiff's FOURTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $250,000.00;

e. On Plaintiff's FIFTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $250,000.00;

f. On Plaintiff's SIXTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, but in no event less than $250,000.00;

g. On Plaintiff's SEVENTH CAUSE OF ACTION, a judgment in an amount to be determined at trial, for the costs, expert fees, and counsel fees associated with this action;

h. Punitive damages in an amount to be determined at trial.

i. Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
August 2, 2021

THE SIEGEL LAW FIRM, P.C.
*Attorneys for Plaintiff*

By: _____
Bradley R. Siegel, Esq.
591 Stewart Avenue, Suite 400
Garden City, New York 11530
(516) 558-7559